# IN THE UNITED STATES DISTR ICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JUSTIN K. VIRDEN,** | **CASE NO. 5:19-CV-00329** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CLIENT SERVICES, INC.,** | **MEMORANDUM OF OPINION AND ORDER** |
| **Defendant.** | |

This matter comes before the Court upon the motion to dismiss of Defendant Client Services, Inc. ("CSI"). (Doc. No. 9.) Plaintiff Justin K. Virden ("Mr. Virden") filed a brief in opposition on May 15, 2019, to which CSI replied on May 29, 2019. (Doc. Nos. 11, 12.) For the following reasons, CSI's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. Background

### a. Factual Background

On behalf of Capitol One Bank (USA), N.A. ("Capital One"), CSI attempted to collect on a delinquent consumer account in the amount of $1,658.91 said to be owed by Mr. Virden. (Doc. No. 1 at ¶ 7.) Capital One turned the collection of the debt over to CSI after Mr. Virden had allegedly defaulted and the obligation was charged-off. (*Id.* at ¶ 8.)

On April 30, 2018, in order to collect on the debt, CSI mailed a collection or "dunning" notice ("Dunning Notice") to Mr. Virden. (*Id.* at ¶ 12.) Although Capital One had waived the right to collect any interest or other charges related to the debt, the Dunning Notice included the following itemization of Mr. Virden's debt:

|   |   |
|---|---|
| Balance Due At Charge-Off: | $1,658.91 |
| Interest: | $0.00 |
| Other Charges: | $0.00 |
| Payments Made: | $0.00 |
| **Current Balance:** | **$1,658.91** |

(*Id.* at ¶¶ 13, 15; Doc. No. 9-1.)[1] As a result of the Dunning Notice, Mr. Virden was led to believe that CSI had the lawful ability to collect interest and other undefined charges when such right had been waived by Capital One. (Doc. No. 1 at ¶ 15.) At the time CSI sent the Dunning Notice, it was a legal impossibility for CSI to add interest and other charges to the debt. (*Id.* at ¶ 25.) Mr. Virden alleges that CSI "purposefully included this misleading language to instill a false sense of urgency in [Mr. Virden] so that he would feel compelled to make payment." (*Id.*)

### b. Procedural History

On February 12, 2019, Mr. Virden filed a complaint in this Court against CSI. (Doc. No. 1.) Mr. Virden alleges that CSI's inclusion of language mentioning interest and other charges in the Dunning Notice violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, Mr. Virden asserts that CSI violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. Instead of answering the complaint, CSI filed the motion to dismiss presently under consideration on April 15, 2019. (Doc. No. 9.) Pursuant to Rule 12(b)(6), CSI moves to dismiss Mr. Virden's complaint on the basis that he has failed to state a claim upon which relief may be granted. Mr. Virden filed a brief in opposition on May 15, 2019, to which CSI replied on May 29, 2019. (Doc. Nos. 11, 12.)

---

[1] The Court may consider the Dunning Notice, which CSI attached as an exhibit to its motion to dismiss, because it is referred to in Mr. Virden's complaint and is central to his claims. *See, e.g.*, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment.") (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

**II.      Standard of Review**

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*,

551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

The FDCPA "was enacted to prevent a wide array of unfair, harassing, deceptive, and unscrupulous collection practices by debt collectors."  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 532 (6th Cir. 2014).  In the Sixth Circuit, "[i]n determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer."  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).  In other words, courts must determine "whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them."  *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011).  "This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices."  *Currier*, 762 F.3d at 533.

### a. 15 U.S.C. § 1692e

Mr. Virden asserts that by listing interest and other charges on the Dunning Notice, "along with a zero dollar figure beside them, [CSI] attempted to coerce [Mr. Virden] into paying the full balance by making him afraid that these charges would possibly begin to accrue if he did not pay immediately."  (Doc. No. 11 at 2.)  As a result, Mr. Virden contends that CSI violated 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Without limiting this general prohibition,

4

this section also specifically prohibits the "false representation of . . . the character, amount, or legal status of any debt," the "threat to take any action that cannot legally be taken or that is not intended to be taken," and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(10).  Mr. Virden claims that CSI violated these specific provisions as well.

In response, CSI contends that the Dunning Notice is "not false, misleading, or deceptive" because it "clearly informs [Mr. Virden] of the amount owed, which includes an itemization of that amount as required by various courts." (Doc. No. 9 at ¶ 9.)  CSI also argues that even if the notice is considered false, deceptive, or misleading, any such misleading statements are immaterial. (*Id.* at ¶¶ 17-19.)

Whether a letter is misleading under the FDCPA is a question of fact. *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).  Thus, the case should be dismissed "only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief." *Id.*  Further, a "collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007).

The Sixth Circuit has not addressed the specific circumstances at issue in this case.  However, the Northern District of Ohio recently found that an analogous claim was enough to survive a motion to dismiss. *Gaston v. Fin. Sys. of Toledo, Inc.*, No. 3:18-cv-2652, 2019 WL 2210769 (N.D. Ohio May 22, 2019).  In *Gaston*, as here, the defendant sent the plaintiff a collection letter that contained columns for "Interest" and "Other" with "0.00" listed for both. *Id.* at *1.  The plaintiff claimed that

5

"even though the columns contained '.00' balances, the reference to 'interest' and 'other' in the Letter 'misleadingly suggests to consumers the false possibility that Defendant could, and intended to, collect an amount that would be above and beyond that which was outlined as the total due on the collection correspondence.'" *Id.* at *3. Recognizing that the Sixth Circuit had not considered the issue, the court held: "[C]onsidering the non-binding divergent precedent and drawing all reasonable inferences in Plaintiff's favor, I conclude it is plausible the itemization could mislead the least sophisticated consumer." *Id.*

This ruling is supported by the holdings of several other district courts from outside of the Sixth Circuit. *E.g.*, *Driver v. LJ Ross Associates, Inc.*, No. 3:18-cv-00220-MPB-RLY, 2019 WL 4060098, at *4 (S.D. Ind. Aug. 28, 2019) ("By stating that the interest and charges stood at $0.00, the letter reasonably could be read to imply that such charges could begin to accrue in the future, if Driver did not pay the debt."); *Duarte v. Client Services*, No. 18 C 1227, 2019 WL 1425734, at *3 (N.D. Ill. Mar. 29, 2019) ("The phrase 'Other Charges' along with an amount of '$0.00' listed could have implied to plaintiff, as well as the unsophisticated consumer, that plaintiff could have incurred additional charges."); *Wood v. Allied Interstate, LLC*, No. 17 C 4921, 2018 WL 2967061, at *3 (N.D. Ill. June 13, 2018) ("Wood has plausibly alleged that Allied, by including columns for fees and collection costs and stating that the amount owed for each was '$0.00,' likewise suggested that $0.00 was only the current amount owed under each category and that the amount owed might increase over time.").

The Court agrees with the reasoning of these cases and of its sister court in this district, and finds that "drawing all reasonable inferences in Plaintiff's favor . . . it is plausible the itemization could mislead the least sophisticated consumer." *Gaston*, 2019 WL 2210769, at *3. There are

multiple ways in which the itemization of interest and other charges on the Dunning Notice could be interpreted by the least sophisticated consumer. The consumer may assume that interest and other charges were not added and would never be added *or* that interest and other charges would begin to accrue if the debt was not paid. On a motion to dismiss, the Court cannot find that this second interpretation is clearly unreasonable. Indeed, "[w]hy . . . would [a debt collector] include a column for fees and collection charges, and insert a dollar figure ($0.00), if not to suggest that that such fees and costs might possibly accrue in the future?" *Wood*, 2018 WL 2967061, at *2. The possibility that a consumer would interpret the Dunning Notice as indicating that interest and other charges would begin to accrue is further supported by CSI's use of the phrase "Current Balance," which intimates that the amount owed may change in the future. That change could result from the consumer paying down the debt, but an unsophisticated consumer may assume that such change could also result from the addition of interest and other charges when those things are itemized directly above the "Current Balance." Consequently, Mr. Virden has plausibly alleged that the Dunning Notice is deceptive because it "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Lamar*, 503 F.3d at 512.

Moreover, the cases relied on by CSI are distinguishable. For instance, in *Delgado v. Client Services, Inc.*, the collection letter indicated that the plaintiff "had already begun repaying his debt . . . and still the interest and other charges remained at zero." No. 17 C 4364, 2018 WL 1193741, at *4 (N.D. Ill. Mar. 7, 2018). The court found this fact particularly important because if the plaintiff "believed that the Letter was threatening to assess interest and collection fees, it would not make sense that the amounts remained at zero after collection had already begun." *Id.* Here, the Dunning Notice does not indicate that Mr. Virden has made any payments on the debt yet. Further, in *Dick v.*

7

*Enhanced Recovery Co., LLC*, the collection letter provided payment options that would satisfy the debt in its entirety, including specifying a future date on which the plaintiff could make a one-time reduced payment. No. 15-CV-2631 (RRM) (SMG), 2016 WL 5678556, at *5 (E.D.N.Y. Sept. 28, 2016). While the Dunning Notice contains an account resolution offer, there is no indication that the offer amount would not change in the future, and the offer therefore does not have the same clarifying effect as the payment options in *Dick*.

Additionally, the collection letters in *Dick* and two of the other cases cited by CSI contained language tending to indicate the amount of the debt was final, rather than the "Current Balance" language used in the Dunning Notice. *Id.* at *1 ("Amount of Debt"); *see also Coletta v. Allied Interstate, LLC*, No. 18 CV 4014, 2018 U.S. Dist. LEXIS 219732, at *1 (N.D. Ill. Dec. 10, 2018) ("Amount Owed"); *Jones v. Professional Fin. Co., Inc.*, No. 17-61435-CIV-DIMITROULEAS, 2017 WL 6033547, at *1 (S.D. Fla. Dec. 4, 2017) ("The letter has several columns, including 'service date, *amount*, current interest rate, interest, fees, and *total*.'") (emphasis added). This type of language reduced any ambiguity regarding whether fees or interest would be added in the future. Finally, the court in *Hussain v. Alltran Fin., LP*, did not directly address whether the itemization of interest and other fees could impact the misleading nature of a collection letter because the argument was not raised by the plaintiff. No. 17-cv-3571-ARR-CP, 2018 WL 1640584, at *1 (E.D.N.Y. Apr. 4, 2018) (summarizing plaintiff's allegation that the collection letter was misleading because the letter did not explicitly state whether interest was accruing).

The Court's holding also does not, as CSI contends, place debt collectors between a rock and a hard place. CSI cites *Delgado* to argue that its Dunning Notice would also violate the FDCPA if it failed to include the itemization of interest and other charges that Mr. Virden is challenging. *Delgado*,

2018 WL 1193741, at *3. Thus, CSI contends it "cannot simply list the amount owed, for fear of being misleading, but likewise, cannot breakdown the amount into categories either, for fear of being misleading." *Id.* But *Delgado* relied on a Seventh Circuit case that held that itemization was required when the balance was accruing interest and included service charges and attorneys' fees. *Id.* (citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)). In contrast, Mr. Virden's debt is static and does not include interest or other fees. As such, CSI could have "stat[ed] something like 'N/A' or declin[ed] to mention fees and collection costs at all." *Wood*, 2018 WL 2967061, at *2; *see also Taylor v. Fin. Recovery Services, Inc.*, 886 F.3d 212, 215 (2d Cir. 2018) ("[I]f a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will n[ot] be misleading within the meaning of Section 1692e.").

Finally, the Court also rejects CSI's contention regarding materiality. The Sixth Circuit has "held that a statement must be materially false or misleading to violate Section 1692e." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). However, this "simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.* at 327. Because the Court has found that Mr. Virden has plausibly alleged that the Dunning Notice misled him to believe that CSI had the right to collect interest and other charges on his debt, which could cause a false sense of urgency to pay the debt, CSI's misleading statements are material. *See Gaston*, 2019 WL 2210769, at *3 ("Because the same applies to the fact-sensitive inquiry of whether the representations were material, I also reject Defendant's second argument of immateriality at this stage in the litigation."); *Wood*, 2018 WL 2967061, at *4 ("Allied's misrepresentations—which, Wood plausibly alleges, were intended to induce him to swiftly repay his debt—were material.").

Accordingly, CSI's motion to dismiss Mr. Virden's claims under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10) is denied.

### b. 15 U.S.C. § 1692f

Based on the same reasons discussed above, Mr. Virden contends that CSI also violated 15 U.S.C. §§ 1692f and 1692f(1). Under § 1692f, debt collectors are prohibiting from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Without limiting this general prohibition, § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

CSI first argues that Mr. Virden's claims under these provisions must fail because Mr. Virden does not identify any additional misconduct beyond that which he asserts violates 15 U.S.C. § 1692e. In support of this argument, CSI cites two out-of-circuit district court cases that provide that "[a] claim of a violation of § 1692f is deficient if it does not identify any misconduct beyond that which the plaintiff asserts violates other provisions of the FDCPA." *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010); *see also Fath v. BAC Home Loans*, No. 3:12-CV-1755-O, 2013 WL 3203092, at *13 (N.D. Tex. June 25, 2013). The Sixth Circuit, however, has never adopted that principle. Indeed, the Sixth Circuit has held the opposite: "A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both." *Currier*, 762 F.3d at 356. Thus, courts have found that plaintiffs "can assert a cause of action under § 1692f, even if the alleged illegal conduct fits within § 1692e." *Anger v. Accretive Health, Inc.*, No. 14–cv–12864, 2015 WL 5063269, at *4 (E.D. Mich. Aug. 27, 2015). As a result, Mr. Virden is not precluded from alleging that the Dunning Notice violated both § 1692e and § 1692f.

With respect to Mr. Virden's claim under § 1692f in general, the Court finds that Mr. Virden has adequately alleged a violation based on the same reasoning the Court applied to his claim under § 1692e. *See, e.g.*, *Wood*, 2018 WL 2967061, at *2 ("Because Wood's § 1692f claim rests on the same premise—that Allied's letter was deceptive—as his § 1692e claim, the two claims rise or fall together.").

However, Mr. Virden has also alleged that CSI violated the more specific provision of § 1692f(1). But as CSI points out, the plain language of that provision only forbids *"[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."* 15 U.S.C. § 1692f(1) (emphasis added). There is no language regarding alleged future threats. As such, a debt collector does not violate § 1692f(1) unless it actually attempts to collect an unauthorized amount. *See, e.g.*, *Wilson v. Asset Acceptance, LLC*, 864 F. Supp. 2d 642, 645 (E.D. Ky. 2012) ("Because Plaintiff does not allege that Defendant sought to collect an amount greater than that owed, he has failed to state a claim under § 1692f(1)."). Here, Mr. Virden has not made any allegations that CSI actually attempted to collect any amount it was not authorized to collect. Rather, Mr. Virden only claims that CSI misleadingly implied that it might do so. That is insufficient to state a claim under § 1692f(1).

Consequently, the Court denies CSI's motion to dismiss Mr. Virden's claim under § 1692f, but grants the motion with respect to Mr. Virden's claim under § 1692f(1).

## IV. Conclusion

For the reasons set forth above, CSI's motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to Mr. Virden's claims under 15 U.S.C. §§ 1692e,

1692e(2), 1692e(5), 1692e(10), and 1692f. The motion is GRANTED as to Mr. Virden's claim under

15 U.S.C. § 1692f(1).

    **IT IS SO ORDERED.**

Date: October 2, 2019             *s/Pamela A. Barker*
                                      PAMELA A. BARKER
                                      U. S. DISTRICT JUDGE